UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Anytime Fitness, LLC,

               Plaintiff,

v.

Michael Roberts and MRA Enterprises,

               Defendants.

Case No. 12-CV-02913-SRN-JJG

**ORDER GRANTING ANYTIME FITNESS, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

---

The above-entitled action came on for hearing before the undersigned on April 10, 2013, pursuant to Plaintiff Anytime Fitness, LLC's Motion for Entry of Default Judgment [Doc. No. 9] against Defendants Michael Roberts and MRA Enterprises. Glenna L. Gilbert, Esq. appeared on behalf of the Plaintiff. The Defendants have not answered the Complaint or otherwise defended in this action.

Based upon all of the files, records, and proceedings herein and the arguments of counsel, the Court being duly advised in the premises now makes the following:

**FINDINGS OF FACT**

1. Plaintiff Anytime Fitness, LLC ("Anytime Fitness") personally served Defendants Michael Roberts and MRA Enterprises (collectively, "Defendants") with a copy of the Summons and Complaint on November 27, 2012 when it personally served Michael Roberts, individually and as owner of MRA Enterprises.

1

2. Defendants have failed to answer, plead, or otherwise respond to Anytime Fitness's Complaint.

3. The Clerk of Court entered default against Defendants on December 28, 2012.

4. Anytime Fitness provides a service that enables its franchisees and employees to access electronic mail offered over the Internet. Anytime Fitness establishes email accounts for its franchisees and employees under the anytimefitness.com domain name. Users can send and receive emails through their email accounts. The majority of Anytime Fitness's franchisees use their Anytime Fitness email accounts as their primary tool for communicating via the Internet with their respective customers, prospective customers, vendors and other businesses, and Anytime Fitness's corporate offices.

5. Between May 2011 and June 2012, Defendants sent at least 8,337 unsolicited commercial email messages to Anytime Fitness franchisees and employees that use Anytime Fitness's email service ("Defendants' unsolicited commercial email messages").

6. None of Defendants' unsolicited commercial email messages contained a clear and conspicuous notice that they were advertisements.

7. None of Defendants' unsolicited commercial email messages sent in the months of May 2011, September 2011, October 2011, November 2011, January 2012,

February 2012, March 2012, and June 2012 advised recipients of their right to opt out or decline to receive further commercial messages from Defendants.

8. None of Defendants' unsolicited commercial email messages contained a valid physical postal address for Defendants.

9. Anytime Fitness is the sole owner and licensor of the ANYTIME FITNESS trademark for health and fitness club services.

10. Anytime Fitness has extensively and continuously used its ANYTIME FITNESS trademark throughout the United States since 2002.

11. The ANYTIME FITNESS trademark has been registered on the Principal Register of the United States Patent and Trademark Office since February 10, 2004.

12. Anytime Fitness is the sole owner and licensor of the trademark ![Anytime Fitness logo] (known as the "Running Man Logo") for health and fitness club services.

13. Anytime Fitness has extensively and continuously used the Running Man Logo trademark throughout the United States since 2002.

14. The Running Man Logo trademark has been registered on the Principal Register of the United States Patent and Trademark Office since October 2, 2007.

15. Defendants repeatedly used the ANYTIME FITNESS trademark in Defendants' unsolicited commercial email messages to advertise and promote the products and services offered by Defendants.

16. Defendants used the Running Man Logo trademark in its unsolicited commercial email messages sent in May 2011 to advertise and promote Defendants' products and services.

17. Defendants used the ANYTIME FITNESS trademark in website postings posted in July 2012, August 2012, and September 2012 that advertised Defendants' products and services.

18. None of Defendants' uses of the ANYTIME FITNESS trademark and Running Man Logo trademark were authorized by Anytime Fitness.

19. Anytime Fitness sent a cease and desist letter to Defendants on May 24, 2011 ("first cease and desist letter"). The first cease and desist letter notified Defendants that their use of the ANYTIME FITNESS trademark and the Running Man Logo trademark constituted trademark infringement and demanded that Defendants immediately terminate their use of Anytime Fitness's trademarks.

20. Anytime Fitness sent a second cease and desist letter to Defendants on September 7, 2011 ("second cease and desist letter"). The second cease and desist letter again notified Defendants of their trademark infringement and demanded that Defendants permanently discontinue their use of Anytime Fitness's trademarks.

21. Anytime Fitness sent a third cease and desist letter to Defendants on February 20, 2012 ("third cease and desist letter"). The third cease and desist letter notified Defendants of their continued trademark infringement, unfair competition, deceptive trade practices, and violations of the Can-Spam Act. The third cease and desist

letter also notified Defendants that all users of the @anytimefitness.com email service permanently opted-out of receiving any further commercial email messages from either Defendant. Further, the third cease and desist letter demanded that Defendants stop their unauthorized use of the Anytime Fitness trademarks and comply with the Can-Spam Act and the opt-out.

22. Defendants failed to comply or respond in any way to Anytime Fitness's cease and desist demands.

23. Anytime Fitness is not aware of any commercially reasonable practices and procedures designed by Defendants to effectively prevent violations of the Can-Spam Act, nor have Defendants pleaded any such practices and procedures as a defense.

24. Anytime Fitness has incurred $29,655.06 in attorneys' fees and costs related to this action and anticipates it will incur an additional $1,000 in attorneys' fees in preparing for and attending the oral argument on this motion.

**CONCLUSIONS OF LAW**

1. Defendants were duly served with the Summons and Complaint on November 27, 2012.

2. Defendants failed to answer or otherwise respond to the Complaint.

3. Pursuant to Rule 12 of the Federal Rules of Civil Procedure, the deadline for Defendants to answer or otherwise respond to the Complaint expired 21 days after Defendants were served with the Summons and Complaint.

4. Anytime Fitness is entitled to judgment by default against Defendants on all counts pleaded in Anytime Fitness's Complaint.

5. 15 U.S.C. § 7704(a)(5) makes it unlawful for any person to initiate the transmission of any commercial electronic mail message to a protected computer unless the message provides (i) clear and conspicuous identification that the message is an advertisement or solicitation; (ii) clear and conspicuous notice of the opportunity under paragraph (3) to decline to receive further commercial electronic mail messages from the sender; and (iii) a valid physical postal address of the sender.

6. Defendants' unsolicited commercial email messages violated 15 U.S.C. § 7704(a)(5) of the Can-Spam Act by failing to contain: (1) a clear and conspicuous identification that the message is an advertisement or solicitation; (2) a clear and conspicuous notice of the opportunity to decline to receive further commercial electronic mail messages from the sender; and (3) a valid physical postal address of the sender.

7. A provider of an Internet access service adversely affected by violations of particular provisions of the Can-Spam Act may bring a civil action. 15 U.S.C. § 7706(g)(1). An Internet access service is defined under Section 7702(11) of the Can-Spam Act as "a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package of services offered to consumers. Such term does not include telecommunications services." Plaintiff provides a service that enables its franchisees and employees to access email. (Decl. of Joe

Kingland ¶2.) Plaintiff "created, maintains and operates the email service provided to its franchisees and employees." (Id. ¶ 3.) The Court finds that Plaintiff is an Internet access service. See White Buffalo Ventures, LLC v. Univ. of Texas at Austin, 420 F.3d 366, 373 (5th Cir. 2005) (finding that University's provision of email accounts and email access brought it within the statutory definition of an Internet access service), cert. denied, 546 U.S. 1091; Hypertouch v. Kennedy-Western Univ., No. C 04-05203 SI, 2006 WL 648688, at *3 (N.D. Cal. Mar. 8, 2006) (finding that the plaintiff, which operated email servers and hosted over 120 email accounts, was an Internet access service); but see Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1051-52 (9th Cir. 2009) (finding that individual plaintiff did not have standing under the Can-Spam Act as an Internet Access service provider simply by registering a domain name and using an ordinary Internet connection to set up email accounts).

8. Plaintiff has demonstrated that it has been "adversely affected" by Defendants' violations of Section 7704(5)(A). 15 U.S.C. § 7706(g)(1). Counsel for Plaintiff represents that due to the high volume of spam, Anytime Fitness has experienced higher bandwidth utilization and a disruption in business relationships with Anytime Fitness franchisees. (Tr. at 4, 10) See Hypertouch, 2006 WL 648688, at *4 (noting that Hypertouch had shown an adverse effect from the spam messages by demonstrating that high spam loads had led to decreased server response and crashes, higher bandwidth utilization, and forced hardware and software upgrades).

9. Pursuant to Section 7706(g)(1)(B) of the Can-Spam Act, Anytime Fitness is entitled to recover actual damages or statutory damages, whichever is greater, for Defendants' pattern or practice of repeatedly sending Defendants' unsolicited commercial email messages that violated Section 7704(a)(5) of the Can-Spam Act to Anytime Fitness franchisees and employees. Under Section 7706(g)(3)(A) of the Can-Spam Act, statutory damages equal the amount calculated by multiplying the number of violations (with each separately addressed unlawful message that is transmitted or attempted to be transmitted over the facilities of the provider of Internet access service, or that is transmitted or attempted to be transmitted to an electronic mail address obtained from the provider of Internet access service in violation of Section 7704(b)(1)(A)(i) of this title, treated as a separate violation) by – (i) up to $100, in the case of a violation of section 7704(a)(1) . . . or (ii) up to $25, in the case of any other violation of Section 7704 of this title. The violations at issue here fall under "any other violation of Section 7704," specifically, Section 7705(a)(5).

10. Under Section 7706(g)(3)(A) of the Can-Spam Act, Plaintiff is entitled to up to $25 per violation for Defendants' violations of Section 7704(a)(5). Plaintiff has submitted evidence that Defendants sent the following emails:

(1) One spam email on May 15, 2011 (Bauer Decl. ¶ 11, Ex. C to Bauer Decl.);

(2) One spam email on September 5, 2011 (Bauer Decl. ¶ 14, Ex. E to Bauer Decl.);

(3) One spam email on October 10, 2011 (Bauer Decl. ¶ 17, Ex. G to Bauer Decl.);

(4) One spam email on November 11, 2011 (Bauer Decl. ¶ 19, Ex. H to Bauer Decl.);

(5) One spam email on January 30, 2012 (Bauer Decl. ¶ 21, Ex. I to Bauer Decl.);

(6) 369 spam emails sent between February 21-23, 2012 (Kingland Decl. ¶ 6, Ex. A to Kingland Decl.);

(7) 3,929 spam emails sent between February 28-29 and March 1, 2012 (Kingland Decl. ¶ 7, Ex. A to Kingland Decl.);

(8) 2,230 spam emails sent between May 29-30, 2012 (Kingland Decl. ¶ 10, Ex. C to Kingland Decl.; and

(9) 1,804 spam emails sent between June 13-14, 2012 (Kingland Decl. ¶ 13, Ex. E to Kingland Decl.)

11. The number of emails sent by Defendants in violation of the Can-Spam Act totals 8,337. Based on the statutory maximum of up to $25 per email multiplied by the 8,337 emails, 15 U.S.C. § 7706(g)(3)(A)(ii), Anytime Fitness is entitled to a base damages award of $208,425.

12. Pursuant to Section 7706(g)(3)(C) of the Can-Spam Act, at the court's discretion, an aggrieved Internet access service may obtain aggravated damages of up to three times the amount of the base damages award if the court finds that the defendant

willfully and knowingly committed a violation of Section 7704 (other than Section 7704(a)(1)). 15 U.S.C. § 7706(g)(3)(C). Plaintiff seeks trebled damages under this provision. (Pl.'s Mem. Supp. Entry of Default J. at 12 [Doc. No. 11].) Plaintiff argues that Defendants willfully and knowingly violated the Can-Spam Act by continuing to send spam emails after Plaintiff had sent Defendants a cease and desist letter. (Id.)

13. Exercising its broad discretion to determine an appropriate damages award, the Court declines to award aggravated damages. While it appears that the spam emails sent after the receipt of Plaintiff's February 20, 2012 cease and desist letter demonstrate a willful violation of the Can-Spam Act, the Court finds that an award in excess of the statutory base damages amount is not proportionate to the gravity of Defendants' conduct. See Facebook v. Fisher, No. C 09-05842 JF (PSG), 2011 WL 250395, at *2 (N.D. Cal. Jan. 26, 2011) (reducing the statutory award and declining to award treble damages where the $2 billion requested damages award was not proportionate to the gravity of the defendants' acts); Facebook v. Wallace, No. C 09-798 JF(RS), 2009 WL 3617789, at *2-3 (N.D. Cal. Oct. 29, 2009) (reducing the statutory award and declining to treble damages, even though finding a willful violation of the statute, a TRO, and a preliminary injunction, because the requested amount was not proportionate to the offenses). Rather, the Court finds that the statutory base damages award is sufficiently deterrent and punitive, considering the number of emails in this case, and the fact that Defendant did not send emails in violation of a court order or injunction. See Asis Internet Servs. v. Rausch, No. 08-03186 EDL, 2010 WL 1838752, at *7 (N.D. Cal. May

3, 2010) (declining to award statutory maximum for base damages because of comparatively small number of emails – 24,724 – and because defendant did not violate an injunction). This decision is consistent with the approach taken by other courts considering large treble damages awards in cases brought under the Can-Spam Act. See Yahoo! Inc. v. XYZ Cos., 872 F. Supp.2d 300, 308-09 (S.D.N.Y. Dec. 5, 2011) (collecting cases).

14. Anytime Fitness has succeeded on the merits of its trademark infringement claims.

15. Anytime Fitness's registrations with the United States Patent and Trademark Office for the ANYTIME FITNESS trademark and the Running Man Logo trademark (collectively, "Anytime Fitness trademarks") conclusively establish that the trademarks are valid and that Anytime Fitness owns the trademarks.

16. There is a likelihood of confusion resulting from Defendants' use of the Anytime Fitness trademarks in that there is a real and continuing threat of mistake, deception and confusion among consumers and franchisees as to the source, sponsorship or approval of Defendants' goods and services by Anytime Fitness.

17. Anytime Fitness's trademarks are inherently distinctive, as evidenced by their registration on the Principal Register at the United States Patent and Trademark Office.

18. The ANYTIME FITNESS trademark is suggestive and the Anytime Fitness Running Man Logo trademark could be classified as either fanciful or suggestive because

the Anytime Fitness trademarks require thought, imagination and perception to reach a conclusion as to the nature of the goods.

19. The Anytime Fitness trademarks have amassed considerable strength over more than a decade of continuous use in the United States.

20. Defendants used trademarks in their unsolicited commercial emails and website postings that are identical to the Anytime Fitness trademarks.

21. There is a sufficient relationship in the competitive market between the parties' products, services, and activities for franchisees and consumers to mistakenly assume that Anytime Fitness sponsors or is affiliated with Defendants' promotion of Defendants' goods and services.

22. Defendants demonstrated an intent to pass off their goods or services as the product or service of another when they continued to infringe the Anytime Fitness trademarks even after receiving three cease and desist letters from Anytime Fitness notifying Defendants of their trademark infringement and demanding that Defendants stop using the Anytime Fitness trademarks.

23. It is unlikely that Anytime Fitness franchisees and the public will exercise a substantial amount of care in procuring Defendants' services and products, which supports a finding of a likelihood of confusion among Anytime Fitness franchisees and the consuming public. Defendants' unsolicited commercial email messages containing the Anytime Fitness trademarks offered marketing services to Anytime Fitness franchisees at a low cost of $500 or less. Defendants' website postings containing the

Anytime Fitness trademarks offered free fundraisers and other inexpensive events to the public.

24. Anytime Fitness's showing of a likelihood of consumer confusion regarding the source of Defendants' goods or services creates a presumption that Anytime Fitness will suffer irreparable harm if Defendants are not permanently enjoined from infringing the Anytime Fitness trademarks. Moreover, Defendants "have demonstrated a willingness to continue their activities" without regard for Plaintiff's cease and desist request. See Fisher, 2011 WL 250395, at *3 (awarding injunctive relief in Can-Spam case where defendants ignored the plaintiff's cease and desist requests and the plaintiff expended resources to upgrade its security).

25. The balance of hardships favors granting injunctive relief to Anytime Fitness. Defendants will not suffer irreparable harm as a result of being forced to comply with the law.

26. The public interest is advanced by recognizing property rights in trademarks and the public interest will be served by the avoidance of consumer confusion in Anytime Fitness's industry.

27. Defendants violated the Can-Spam Act.

28. Anytime Fitness's reputation and goodwill will suffer irreparable harm if the Court does not issue an injunction.

29. Anytime Fitness is entitled to a permanent injunction enjoining Defendants from violating the Can-Spam Act.

30. The Court, in its discretion, may award payment of the costs of this action, including reasonable attorneys' fees, against any party. 15 U.S.C. § 7706(g)(4). Plaintiff seeks attorneys' fees and costs in the amount of $30,655.06 and has submitted materials supporting the reasonableness of its fees and costs in this matter. (Decl. of Glenna L. Gilbert [Doc. No. 14]; Exs. A-C to Gilbert Decl.) Accordingly, Plaintiff is awarded $30,655.06 for its attorneys' fees and costs.

## ORDER

**IT IS HEREBY ORDERED:**

1. Anytime Fitness, LLC's Motion for Entry of Default Judgment [Doc. No. 9] is **GRANTED**. Anytime Fitness, LLC ("Anytime Fitness") shall have judgment entered in its favor and against Defendants Michael Roberts and MRA Enterprises on all of the claims set forth in Anytime Fitness's Complaint.

2. Anytime Fitness is awarded statutory damages for Defendants' violations of the Can-Spam Act in the base amount of $208,425 against Defendants, jointly and severally.

3. Anytime Fitness is entitled to and shall have a permanent injunction entered in its favor and against Defendants as follows:

    (a) Effective immediately, Defendants Michael Roberts and MRA Enterprises and their respective agents, servants and employees, and all persons acting in concert with either or both of the Defendants, are hereby permanently restrained and enjoined from:

        (i) Sending or transmitting, or directing, aiding, facilitating or conspiring with others to send or transmit any unsolicited commercial e-mail to any e-mail account on the @anytimefitness.com domain name;

        (ii) Using, or directing, aiding, or conspiring with others to use, Anytime Fitness's computers or computer networks, in any

> manner, directly or indirectly, in connection with the transmission or transfer of any electronic information;
>
> (iii) Acquiring, compiling or transferring e-mail addresses that contain an @anytimefitness.com domain;
>
> (iv) Directly and indirectly using the ANYTIME FITNESS Mark, or any other word, name or design similar to Plaintiff's ANYTIME FITNESS Mark which is likely to cause confusion, mistake, or to deceive;
>
> (v) Directly and indirectly using the Running Man Logo, or any other word, name or design similar to Plaintiff's Running Man Logo which is likely to cause confusion, mistake, or to deceive; and
>
> (vi) Representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive consumers and Anytime Fitness's employees, franchisees and licensees into believing that there is any affiliation or connection between Plaintiff's services and products and either of the Defendant's services or products.

4. This permanent injunction shall be effective immediately, and no bond shall be required.

5. Anytime Fitness is entitled to recover its attorneys' fees and costs pursuant to the Can-Spam Act, 15 U.S.C. § 7706(g)(4). Accordingly, Plaintiff is awarded $30,655.06 for its attorneys' fees and costs.

6. Plaintiff is therefore awarded a total of $239,080.06, including attorneys' fees and costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                        **BY THE COURT:**

Dated: April 23, 2013                    s/Susan Richard Nelson
                                            Susan Richard Nelson
                                            United States District Court Judge